# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:12CV-37-JHM**

**WAYNE JOHNSON,**                                                                    **PLAINTIFF**

**VS.**

**COMMONWEALTH OF KY- COUNTY OF
BUTLER, BUTLER COUNTY SHERIFF'S
DEPARTMENT, and HEATH WEST,**
**Deputy Sheriff, in his individual and/or**
**official capacity**                                                                 **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Wayne Johnson's ("Johnson") Motion for Summary Judgment [DN 25]. Also before the Court are Defendant Commonwealth of Kentucky-County of Butler ("Butler County"), Butler County Sheriff's Department, and Deputy Heath West's Motion for Summary Judgment [DN 31] and Motion to Exclude Testimony from Dr. Terry Cox [DN 32]. Fully briefed, these matters are ripe for review.

## I. BACKGROUND

This action arises out of the arrest of Plaintiff Wayne Johnson for driving under the influence of intoxicants and resisting arrest. On March 17, 2011 at 8:10 p.m.,[1] Heath West, a Deputy of the Butler County Sheriff's Department, received a call from the Butler County Dispatch Center informing him that someone had called and said there was "supposed to be a subject either off Rochester Road right there at the race track hung up in a ditch in a white Ford flatbed truck; or they're at the race track hung up and supposed to be intoxicated." [911

---

[1] As explained by Defendants, the times listed on the 911 transcript are incorrect, and therefore, all the times in this Opinion are from the 911 dispatch report [DN 31-2].

Transcript, DN 31-3, at 3-4].  The caller also told the dispatcher that the driver of the truck was Wayne Johnson although that information was not relayed to Deputy West. Id.

Upon arriving at the entrance of the Soggy Bottom Racetrack at 8:20 p.m., Deputy West encountered two individuals attempting to remove the truck from the mud.  One of the individuals attempting to move the truck told Deputy West that a friend had sent them to get the truck, but the individual informed Deputy West that he was unsure who owned the vehicle. However, Deputy West believed that he recognized the vehicle as belonging to Plaintiff Johnson, who he had arrested for a DUI about six months prior to this incident.  Deputy West then checked the truck's license plate tag with the dispatcher, who confirmed that the vehicle belonged to Johnson.  The dispatcher also provided Deputy West with Johnson's address. Johnson lives a short distance from the racetrack.

While the facts preceding Deputy West's arrival to Johnson's house are largely uncontested, the parties vigorously dispute what occurred during the five minutes between Deputy West's arrival at 8:32 p.m. and his call to dispatch for an ambulance at 8:37 p.m. According to Deputy West, when he arrived at Johnson's place, he found Johnson sitting in a swing on his porch and noticed almost immediately that Johnson was intoxicated.  Deputy West testified that he asked Johnson about his truck and Johnson admitted to driving that day and to getting it stuck in the mud.  Additionally, Deputy West stated that Johnson told him that he had not had any alcohol since arriving home.  Deputy West then asked Johnson to take a field sobriety test which Johnson declined.  At that point, Deputy West determined that he had probable cause to arrest Johnson for driving under the influence.  He made this determination based on the fact that Johnson told him "that he was the one that drove the truck and got it stuck,

and he told me that he hadn't had anything to drink since he got home, and he blew a two sixty something." [West Dep., DN 31-6, at 15].[2]

Deputy West then proceeded up to the porch area where Johnson was sitting.  The porch area of Johnson's residence is a wooden deck on an incline and about five feet off the ground. Situated on the deck is a railing that is approximately four feet high.  Once on the deck, Deputy West grabbed Johnson's right arm in order to make him stand and to place handcuffs on him. Johnson "jerked away" from Deputy West during this process.  Deputy West described the next series of events as follows:

> I still had him by his right arm.  I pinned him against his trailer, which was to our right. I had this arm on his back, got his right hand up behind his back and tried to put a cuff on it. He had on some kind of old long -- a shirt kind of like that one, but the sleeves was unbuttoned, and my cuff got hung in it. And he jerked away again, so I was going to walk him down the steps and try to put him in the car. When we went towards the steps, he stumbled and fell and he hit this part here on the rail, and I remember his feet coming up, and I still had a hold of him, and he was fixing to pull me off with him, and that's when I turned him loose.

[West Dep., DN 31-6, at 17].  Johnson then fell over the right side of the rail and landed on his head.  Deputy West subsequently called EMS after briefly talking to Johnson about his injuries.

According to Johnson, he arrived at the Soggy Bottom Racetrack around noon on March 17, 2011.  He said that he did not have anything to drink while at the racetrack.  After getting his truck stuck in the mud at around 2:00 p.m., he said that he walked home and began drinking at his house.  As it started to get dark that day, Johnson stated that Deputy West pulled up in his police cruiser and immediately walked up the stairs to his porch.  Johnson then recalled Deputy West identifying himself as "Heath" and informing Johnson that he was arresting him for driving under the influence. [Johnson Dep., DN 31-7, at 42].  Johnson stated that he asked Deputy West

---

[2] The reference to Johnson blowing a "two sixty something" is actually a reference to the blood alcohol level which was tested after Johnson's arrest.

a couple of questions which caused Deputy West to become angry with him.  Following this brief exchange, Johnson testified to the following:

> He jumped up on the porch, grabbed that arm (Indicating).  He didn't grand [*sic*] the right arm. He grabbed the left one, and he jerked me out of the swing. And I kind of got up onto my feet. He had hold of that arm. When he did, he hit me right there in the mouth and busted my lip.

[Johnson Dep., DN 31-7, at 42].  Johnson then said that Deputy West pushed him against the trailer and punched him twice, once in the eye and the other time on the lip.  After punching him twice in the face, Johnson testified that Deputy West threw him over the rail and into his yard.

## II.  STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).  "The mere existence

of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## IV. ANALYSIS

Plaintiff alleges that Defendants Butler County, Butler County Sheriff's Department, and Deputy Heath West, in his official and individual capacity, violated 42 U.S.C. § 1983 (Count IV). He also alleges state-law claims for assault and battery (Count I), outrage/intentional infliction of emotional distress (Count II), and punitive damages (Count III). Defendants seek summary judgment on all claims alleged in Plaintiff's Complaint. Also, Plaintiff seeks summary judgment on Count IV and Count I of his Complaint. Because the facts underlying the cross-motions for summary judgment substantially overlap, the Court will simultaneously address the merits of the claims and rule accordingly.

### A. § 1983 Claims (Count IV)

Plaintiff brings claims under 42 U.S.C. § 1983 against Butler County, Butler County Sheriff's Department, and Deputy Heath West for violation of his constitutional rights. To state a claim under § 1983, a plaintiff must establish "both that 1)[ ]he was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001) (citation omitted). Because "[s]ection 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced[,]" the Court's "first task . . . is to identify the specific constitutional . . . rights allegedly infringed." Meals v. City of Memphis, 493 F.3d 720, 727–28 (6th Cir. 2007) (citations omitted). In this case, Plaintiff contends that Defendants violated his Fourth and Fourteenth Amendment rights by arresting him

without probable cause, using excessive force, and acting with deliberate indifference by failing to train.

The Sixth Circuit has held that municipal departments are not subject to suit under § 1983. See Rhodes v. McDannel, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department is not subject to suit under § 1983); Marbry v. Corr. Med. Servs., 238 F.3d 422, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not subject to suit under § 1983). Therefore, the Court finds that the Butler County Sheriff's Department is not subject to suit under § 1983. Instead, Butler County is the proper defendant. See Monell v. New York Dep't of Social Servs., 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (holding that a municipality can be properly sued under § 1983). The Court will construe Plaintiff's claim against the Butler County Sheriff's Department as a claim against Butler County itself. See Smallwood v. Jefferson Cnty. Gov't, 743 F.Supp. 502, 503 (W.D. Ky. 1990) (construing claims against the Jefferson County Government, Jefferson County Fiscal Court, and Jefferson County Judge Executive against Jefferson County itself); Jones v. Binion, 2011 WL 1458429, at *9 (E.D. Ky. Apr.15, 2011) (construing claims against the Carter County Detention Center and Carter County Fiscal Court against Carter County itself).

Likewise, as to the official capacity claims against Deputy West, the Sixth Circuit has held that a suit against an individual "in his official capacity" is essentially a suit brought directly against the local government unit. Leach v. Shelby Cnty. Sheriff, 891 F.2d 1241, 1245 (6th Cir. 1989); see Kentucky v. Graham, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity." Isom v. Ramsey, 2008 WL 2079408, at *2 (W.D. Ky. May 15, 2008) (citing Will v. Mich. Dep't of State Police, 491 U.S.

58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).  Thus, the Court will construe Plaintiff's official-capacity claims against Deputy West as against Butler County.

### 1.  § 1983 Claims against Butler County

Plaintiff contends that Butler County "refused to make a legitimate effort to properly train, supervise, or discipline its Sheriff's Deputy Officers." [Compl., DN 1, at 6].  "The courts recognize a systematic failure to train police officers adequately as custom or policy which can lead to city liability." Gregory v. City of Louisville, 444 F.3d 725, 753 (6th Cir. 2006). The United States Supreme Court held that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378 (1989).  In order to establish a failure-to-train claim in the Sixth Circuit, a plaintiff must demonstrate that: "1) the City's training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the City's deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." Ciminillo v. Streicher, 434 F.3d 461, 469 (6th Cir. 2006) (citing Russo v. City of Cincinnati, 953 F.2d 1036, 1046 (6th Cir. 1992)).

Defendant Butler County asserts that this claim should be dismissed due to the lack of evidence produced by Plaintiff that the County had an inadequate training program.  In response, Plaintiff argues that Butler County failed to provide adequate training to police officers, including Deputy West, on the use of force and that the County knew of Deputy West's history with the use of excessive force.  Additionally, Plaintiff contends that Butler County's failure to actually have a policy regarding the use of force by the Sheriff's Department demonstrates deliberate indifference.

As to Plaintiff's claim regarding the training of Deputy West, "[a]llegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." Sova v. City of Mt. Pleasant, 142 F.3d 898, 904 (6th Cir. 1998) (citation omitted).  In the cases of inadequate training, Canton provides this guidance:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

Canton, 489 U.S. at 390.

In support of his claim, Plaintiff offers an affidavit from the former Sheriff of Butler County, Joe Gaddi, stating that Deputy West received approximately six to eight citizen complaints over the course of three years.  However, he has no specific recollection about most of these complaints and there is no documentation to verify them.  The only event that Gaddi could specifically recount involved an issue of insufficient probable cause, but despite Gaddi's statement that he placed a disciplinary note in Deputy West's file, it is not currently in evidence.[3] The affidavit of Joe Gaddi is insufficient to support Plaintiff's claim that there are "prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury."  Plinton v. County of Summit, 540 F.3d 459, 464 (6th Cir. 2008) (citation and internal quotation marks omitted).  In terms of excessive force, Gaddi only identifies one specific

---

[3] To the contrary, in an affidavit filed by Deputy West, he claims that Sheriff Gaddi terminated another Deputy, Bobbie Hooten, for improper conduct in the case.  He also specifically denies Sheriff Gaddi's accusation that he falsely reported an anonymous tip in order to obtain probable cause.

incident where he believes Deputy West violated an individual's constitutional rights. However, this occurred after his time as sheriff, and therefore, outside the purview of his knowledge. Furthermore, the Kentucky State Police conducted an independent investigation of the Deputy West's use of force in that instance and found nothing wrong on his part.

Next, Plaintiff relies upon Dr. Terry Cox who opines that the County failed to put in place a use-of-force policy. However, as Dr. Cox admits, he does not offer any opinions regarding the training of deputies for Butler County. [Cox Dep., DN 31-12, at 17]. In contrast, the record clearly shows that Deputy West received training from the state police academy and obtained periodic training updates. Additionally, Sheriff Ward testified that he has the deputies provide reports when they use either lethal or non-lethal force. During the process of gathering information for these reports, Sheriff Ward indicated that he interviews both the deputy and the victim. The Plaintiff fails to identify any aspect of Butler County's training to suggest that it permits officers to violate an individual's constitutional right. Doe v. Magoffin County Fiscal Court, 174 F. App'x 962, 969 (6th Cir. 2006) ("Doe neither identifies any policy or custom that she challenges, nor alleges that the fiscal court affirmatively condoned sexual abuse.").

Finally, Plaintiff attempts to rely upon the doctrine of respondeat superior. However, a municipality may not be held liable under this theory in a § 1983 claim. See Monell, 436 U.S. at 691–92; D'Ambrosio v. Marino, 747 F.3d 378, 388 (6th Cir. 2014). In other words, Butler County may not be held liable "*solely* because it employs a tortfeasor." Monell, 436 U.S. at 691. Plaintiff cites to Cabinet for Families and Children v. Cummings, 163 S.W.3d 425, 431 (Ky. 2005), which involves the Kentucky Whistleblower Act and Title VII issues, not suits under § 1983. To the extent that Plaintiff seeks to amend his Complaint by alleging a new state-law claim, this is not proper. Simply put, "[t]o permit a plaintiff to do otherwise would subject

defendants to unfair surprise." <u>Tucker v. Union of Needletrades, Industrial and Textile Employees</u>, 407 F.3d 784, 788 (6th Cir. 2005) (citation omitted).

### 2. § 1983 Claims against Deputy Heath West

In Count IV of his complaint, the Plaintiff alleges § 1983 claims against Deputy West in his individual capacity for excessive use of force. Plaintiff also claims that his complaint states a claim against Deputy West for arresting him for driving under the influence and resisting arrest when he had no probable cause to do so. The Defendants disagree. While Count IV of Plaintiff's Complaint does not assert a wrongful arrest allegation, the fact section of the complaint states that "[a]t no point Officer West did have probable cause to determine if Plaintiff had been driving under the influence at the time he arrested Plaintiff" and "Officer West did not have probable cause to charge Plaintiff for resisting arrest." [Compl., DN 1, at 3]. The Court believes that Plaintiff sufficiently put Defendants on notice of a probable cause/wrongful arrest claim. As a result, the Court will address the merits of the wrongful arrest claim and the excessive force claim.

#### a. Wrongful arrest for driving under the influence.

Defendant Deputy West argues that he did have probable cause to arrest Plaintiff for driving under the influence and Plaintiff argues that no probable cause existed. "In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." <u>Fridley v. Horrighs</u>, 291 F.3d 867, 872 (6th Cir. 2002) (citing <u>Painter v. Robertson</u>, 185 F.3d 557, 569 (6th Cir.1999)). "For probable cause to arrest to exist, the facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." <u>Thacker v. City of Columbus</u>,

328 F.3d 244, 255 (6th Cir. 2003) (citation and internal quotation marks omitted). In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." Fridley, 291 F.3d at 872. Additionally, "state law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an arrest." Kennedy v. City of Vila Hills, 635 F.3d 210, 215 (6th Cir. 2011).

Deputy West initially arrested Plaintiff for driving under the influence. It is prohibited in Kentucky to "operate or be in physical control of a motor vehicle" while under the influence of intoxicants. KRS 189A.010. If an officer in Kentucky has probable cause, he may arrest an individual without a warrant for either a misdemeanor or felony committed in his presence. KRS 431.005. However, an officer may not arrest an individual without a warrant for committing a misdemeanor outside of his presence except for a violation of KRS 189A.010 or KRS 281A.210 (operating a commercial vehicle under the influence). Id. For a violation of KRS 189A.010, "[p]robable cause exists if the arresting officer has reason to believe, in light of all the evidence, that a 'fair probability' exists that the defendant was operating or in physical control of the motor vehicle while under the influence." Commonwealth v. Ratliff, 2011-CA-001853-DG, 2013 WL 4710330, *2 (Ky. Ct. App. Aug. 30, 2013) (citing White v. Commonwealth, 132 S.W.3d 877, 883 (Ky. Ct. App. 2003)). In defining "operate or be in physical control," courts are instructed to consider the following factors:

> (1) whether or not the person in the vehicle was asleep or awake; (2) whether or not the motor was running; (3) the location of the vehicle and all of the circumstances bearing on how the vehicle arrived at that location; and (4) the intent of the person behind the wheel.

Wells v. Commonwealth, 709 S.W.2d 847, 849 (Ky. App. 1986). However, courts must consider the totality of the circumstances as this is not an exhaustive list of factors. Ratliff, 2013 WL 4710330, *2 (citing White, 132 S.W.3d at 883).

The Defendant cites to fourteen factual contentions that support his belief that probable cause existed at the time he arrested Plaintiff. [Defs.' Mem., DN 31-1, at 25-27]. Several of Deputy West's supporting facts for probable cause relate directly to the importance of the initial call made to dispatch about Johnson's vehicle being stuck at the racetrack. The Plaintiff characterizes the caller as an anonymous tipster while Deputy West describes the person as a citizen informant. "[C]itizen informants are tipsters who have face-to-face contact with the police or whose identity may be readily ascertained." Garcia v. Commonwealth, 335 S.W.3d 444, 449 (Ky. App. 2010) (citing Commonwealth v. Kelly, 180 S.W.3d 474 (Ky. 2005)). Clearly though, the caller in this case was not a citizen informant.

Anonymous tips are generally discussed in the context of reasonable suspicion as opposed to probable cause. In the context of reasonable suspicion, courts are instructed to evaluate the weight of the tip based on whether there is "sufficient indicia of reliability, i.e., the tip must provide predictive information and a way to test the informant's knowledge or credibility." United States v. Atchley, 474 F.3d 840, 848 (6th Cir. 2007) (citing Florida v. J.L., 529 U.S. 266, 270–72, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000.

In this instance, the only information provided by the caller that would suggest reliability on her part is the fact that she knew the white truck belonged to the Plaintiff. However, as evidenced by the dispatch records, this fact was never communicated to Deputy West. Instead, when Deputy West arrived at the racetrack, he found individuals attempting to pull the truck out of the mud and the Plaintiff not in the vicinity. Deputy West noted that he thought the individuals attempting to dislodge the vehicle from the mud seemed suspicious. Perhaps that is why he asked one of them to submit to a breathalyzer, but it raises no reasonable suspicions as to Plaintiff's driving of the vehicle. Prior to arriving at Plaintiff's residence, the 911 transcript and

Deputy West's testimony[4] demonstrate that the only information Deputy West had that tied Plaintiff to the truck was that he owned the vehicle.

Because the events that unfolded at Johnson's residence involve only two versions, Johnson's and Deputy West's, the Court must resolve all reasonable inferences "in the light most favorable to the party opposing the motion." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citation and internal quotation marks omitted). However, since both parties have filed summary judgment on this claim, the Court must address the facts from both parties. First, with respect to Defendant's motion, the Court must draw all inferences in favor of the Plaintiff. According to Johnson, there was little dialogue that occurred between himself and Deputy West other than Deputy West announcing his presence and informing Plaintiff that the he was arresting him for driving under the influence. Turning to the <u>Wells</u> factors, there was no person behind the wheel, so the first and fourth factors weigh against probable cause. Additionally, it seems clear that the engine was not running at that time or if it was, it was being operated by the individuals at the scene who were trying to free the vehicle from its stuck position. As for the location of the vehicle, it appears as though the Soggy Bottom Racetrack, as the name suggests, is quite a muddy area. The fact that the truck was stuck in mud does not necessarily indicate that that whoever drove the truck at the time it was stuck was intoxicated. A jury could easily find that Deputy West lacked probable cause to arrest Johnson for driving under the influence. Defendants' summary judgment motion must be denied because a genuine issue of material fact exists as to whether Deputy West had probable cause to arrest Plaintiff.

---

[4] Although Deputy West testified to talking to someone who told him that Plaintiff had been drinking at the racetrack all day and witnessed Johnson try to drive his truck, Deputy West was unable to identify this person during the deposition for this case.

As for Plaintiff's summary judgment motion, Deputy West testified that he asked Plaintiff whether he had been drinking since he arrived home and Plaintiff responded that he had not. Also, when asked about his vehicle, Plaintiff admitted to driving it and getting it stuck in the mud. Finally, according to Deputy West, Johnson refused to submit to a field sobriety test. While the refusal to take a field sobriety test standing alone may not provide a basis for probable cause, it may be considered a factor in establishing probable cause. Kinlin v. Kline, 749 F.3d 573, 580 (6th Cir. 2014) (acknowledging the approach used by the Tenth and Eleventh Circuits whereby police officers may consider a refusal to submit to a field sobriety test in combination with evidence of alcohol consumption in forming a basis for probable cause). If a jury credits this testimony, it might find that Deputy West had probable cause to arrest the Plaintiff for driving under the influence. Thus, Plaintiff's summary judgment is denied.

### b. Lack of probable cause for Resisting Arrest charge

Plaintiff next contends that Deputy West lacked probable cause to arrest him for resisting arrest. To obtain a conviction for resisting arrest, Kentucky law requires the following:

(1) A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer, recognized to be acting under color of his official authority, from effecting an arrest of the actor or another by:
(a) Using or threatening to use physical force or violence against the peace officer or another; or
(b) Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

KRS 520.090. Deputy West testified that when he attempted to place the handcuffs on Johnson, Plaintiff twice "jerked away" from him. [West Dep., DN 31-6, at 17]. This action would most likely constitute more than "passive resistance" if a jury credited Deputy West's account. See Blair v. Commonwealth, 2005-CA-002017-MR, 2007 WL 1720133 (Ky. Ct. App. June 15, 2007) ("We find no way of how wrestling oneself from the firm grasp of a police officer can be

termed as 'passive resistance' or 'simple nonsubmission.'").  In contrast, Plaintiff denies that Deputy West even attempted to place handcuffs on him.  [Johnson Dep., DN 31-7, at 14].  According to Johnson, Deputy West grabbed his left arm, hit him in the face twice, and then threw him over the porch railing.  [Johnson Dep., DN 31-7, at 12].  The Court finds a genuine issue of material fact as to probable cause for the resisting arrest charge.  Therefore, summary judgment is denied for both Plaintiff and Defendants.

### c.  Qualified Immunity

Deputy West next contends that even if the Court finds a constitutional violation, he is entitled to qualified immunity.  "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Miller v. Sanilac Cnty., 606 F.3d 240, 247 (6th Cir. 2010) (quoting Phillips v. Roane Cnty., 534 F.3d 531, 538 (6th Cir. 2008)).  The burden is on the Plaintiff to prove that Defendant is not entitled to qualified immunity by demonstrating that a constitutional right was violated and that the right was clearly established at the time of the violation. Scott v. Harris, 550 U.S. 372, 377, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  Simultaneously, the Court's analysis of the alleged facts is undertaken in the light most favorable to the party asserting the injury. Ammex, Inc. v. Durant, 381 Fed. App'x 482, 485 (6th Cir. 2010).

The issue of qualified immunity in this instance revolves around a factual dispute, not a legal one.  Simply put, the parties vigorously dispute the events that unfolded at Johnson's residence.  Thus, "where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." Green v. Throckmorton,

681 F.3d 853, 864 (6th Cir. 2012) (quoting <u>McKenna v. Edgell</u>, 617 F.3d 432, 437 (6th Cir. 2010) (internal quotation marks omitted). In other words, if a jury accepted Plaintiff's version of the facts, Deputy West's "conduct would be 'plainly incompetent' and thus strip him of qualified immunity." <u>Green</u>, 681 F.3d at 864 (citing <u>Kennedy v. City of Cincinnati</u>, 595 F.3d 327, 336–38 & n. 7 (6th Cir. 2010)). Deputy West's summary judgment motion based on qualified immunity is denied.

### d. Excessive Force Claim

A claim that the government used excessive force during the course of an arrest is exclusively analyzed under the Fourth Amendment's "objective reasonableness" standard. <u>Graham v. Connor</u>, 490 U.S. 386, 388, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In <u>Graham</u>, the Supreme Court explained that the application of this test "requires careful attention to the facts and circumstances of each particular case, including the [1] severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id</u>. at 396. The "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," <u>id.</u>, and "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." <u>Id</u>. at 397. A court is not to substitute its own notion of the "proper police procedure for the instantaneous decision of the officer at the scene." <u>Boyd v. Baeppler</u>, 215 F.3d 594, 602 (6th Cir. 2000).

Plaintiff alleges that Deputy West both struck him in the face twice and threw him over the railing. Deputy West denies that he hit Plaintiff in the face and says that Johnson stumbled over the railing as he was trying to take him down off the porch. Plaintiff responds to Deputy

West's version of the facts by arguing that he could not have landed so far from the porch if he had merely tripped over the railing. Deputy West contends that no reasonable jury would accept Plaintiff's testimony concerning the alleged excessive force due to Johnson's intoxication at the time. Summary judgment on the excessive force claim is not appropriate for either party under these disputed facts.

Although Deputy West asserts qualified immunity as to Plaintiff's excessive force claim, he wisely concedes[5] that striking a suspect in the face and throwing him over the railing would constitute excessive force where the suspect was only slightly resisting arrest. It is clearly established that an officer should use no more force than necessary. See, e.g., Adams v. Metiva, 31 F.3d 375, 386–87 (6th Cir. 1994). Here, the Court must deny qualified immunity for Deputy West because it involves a factual dispute that must be left to a jury to determine. See Green, 681 F.3d at 864.

### B. Count I: Assault and Battery

Plaintiff alleges a claim of assault and battery solely against Deputy West. Defendant West argues that because the Complaint does not specify whether Plaintiff is suing him in his official or individual capacity, it must mean that Plaintiff means to assert action only against him in his official capacity. Alternatively, Deputy West contends that to assert a claim against him in his individual capacity, Plaintiff must do so with specificity. [6] The Court disagrees and finds that

---

[5] Deputy West does suggest that Plaintiff resisted arrest, but he appears to recognize that striking Plaintiff in the face would not be reasonable force for Johnson merely jerking away when handcuffs were trying to be put on him.

[6] Defendant relies upon Calvert Investments, Inc. v. Louisville & Jefferson County Metropolitan Sewer Dist., 805 S.W.2d 133 (Ky. 1991) to argue that Plaintiff cannot assert a claim against Deputy West in his individual capacity without specifically doing so within the count of the complaint. However, Calvert only found that Plaintiff inadequately alleged a claim for personal liability after being "persuaded by the failure to specify individual capacity in the heading, the lack of specificity in the body, and the failure to seek judgment against such individuals in the concluding demand . . . ." Calvert, 805 S.W.2d at 139. Of course, in this case, Plaintiff identified Deputy West in both his individual and official capacity in the heading of the Complaint.

the heading of Plaintiff's Complaint, which specifically names Deputy West in both his official and individual capacity, sufficiently placed Deputy West on notice for the assault and battery claims against him in his individual capacity. Therefore, the Court will proceed to the merits of these claims.

Assault and battery are distinct claims: "one is liable for assault if 'he acts intending to cause a harmful or offensive contact . . . or an imminent apprehension of such a contact, and the other is put in such imminent apprehension.'" Humphress v. United Parcel Service, Inc., 31 F. Supp. 2d 1004, 1014 (W.D. Ky. 1997) aff'd, 172 F.3d 48 (6th Cir. 1998) (quoting Restatement (Second) of Torts § 21). As to the suit against Deputy West in his official capacity, the Court agrees with Defendants that an official capacity claim for a state-law cause of action is barred by absolute immunity. Jones v. Cross, 260 S.W.3d 343, 345 (Ky. 2008) ("[O]fficial immunity is absolute when an official's or an employee's actions are subject to suit in his official capacity.").

Next, Deputy West contends that he is entitled to qualified official immunity from state-law claims asserted against him in his individual capacity. Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[ ]; (2) in good faith; and (3) within the scope of the employee's authority. Yanero v. Davis, 65 S.W.3d 510, 522 (Ky. 2001). The parties do not dispute the discretionary nature of Deputy West's actions. To prove a lack of good faith, Plaintiff must show that Deputy West "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." Id. at 523 (citation omitted). Because Plaintiff established a genuine issue of material fact concerning Deputy West's alleged use of excessive force, the Court finds that Defendants' motion for summary judgment must be denied as to the assault and battery claims. Lamb v. Telle, 5:12-CV-

00070-TBR, 2013 WL 5970422 (W.D. Ky. Nov. 8, 2013) ("Where summary judgment is denied on constitutional theories brought under § 1983, claims of official immunity under Yanero and its progeny fail as well.").  Correspondingly, Plaintiff's summary judgment claim must be denied because he has failed to demonstrate a lack of a genuine of material fact.

### C.  Count II: Tort of Outrage/Intentional Infliction of Emotional Distress

Plaintiff asserts a claim for outrage under Kentucky law against all Defendants in this action.  As previously discussed, absolute immunity bars all claims against Butler County, Butler County Sheriff's Department, and Deputy West in his official capacity. See Cross, 260 S.W.3d at 345.  In Kentucky, this tort is also known as intentional infliction of emotional distress ("IIED"). See Stringer v. Wal–Mart Stores, Inc., 151 S.W.3d 781, 788 (Ky. 2004).  Kentucky considers the claim of outrage to be a "gap-filler" tort. Rigazio v. Archdiocese of Louisville, 853 S.W.2d 295, 298–99 (Ky. Ct. App.1993).  Thus, a claim of outrage is not a valid cause of action in Kentucky where the alleged conduct makes out a claim for another tort for which emotional distress damages are available. Id.  The result is the general rule that an IIED or outrage claim cannot be pled by itself, in tandem with another tort, or in the alternative as long as some other tort with adequate relief fits the facts. See Martin v. Crall, 2007 WL 2083682, at *4–5 (W.D. Ky.  July 18, 2007) (dismissing IIED claim on summary judgment where plaintiff had alleged a § 1983 claim for deliberate indifference to a serious medical need which allowed damages for emotional distress); see also Taylor v. Univ. Med. Ctr., Inc., 2005 WL 1026190, at *3 (W.D. Ky. 2005). The sole exception to this general rule is where the alleged "actions or contact is intended only to cause extreme emotional distress in the victim." Brewer v. Hillard, 15 S.W.3d 1, *7 (Ky. Ct. App. 2000).

Plaintiff separately asserted claims for assault and battery which allow recovery for emotional distress. Rigazio v. Archdiocese of Louisville, 853 S.W.2d 295, 299 (Ky. App. 1993) ("[W]here an actor's conduct amounts to the commission of one of the traditional torts such as *assault*, *battery*, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie.") (emphasis added). Thus, to recover for the tort of outrage, Plaintiff must provide evidence that Deputy West "intended only to cause extreme emotional distress in the [Plaintiff]." Brewer, 15 S.W.3d at 8. In this case, Plaintiff alleges multiple instances of emotional distress that were the result of his injuries. However, he fails to provide any facts to show that Deputy West's sole intent was to cause him emotional distress. "Since emotional distress as an element of damages follows the infliction of a personal injury, the *same* emotional distress cannot be the basis of recovery in a stand-alone tort." Childers v. Geile, 367 S.W.3d 576, 582 (Ky. 2012). Because Plaintiff's emotional injuries are the same as those from the alleged assault and battery, he may not recover under this theory. Therefore, the Court grants summary judgment in favor of the Defendants.

### D. Count III: Punitive Damages

Plaintiff seeks punitive damages against all Defendants in this case, including Deputy West in both his individual and official capacity. Plaintiff's complaint is ambiguous as to whether he seeks punitive damages under § 1983 or Kentucky law. As a result, the Court will address both types of claims.

Defendants aver that the punitive damages claim must be dismissed against Butler County and Deputy West in his official capacity. "Under the 'general rule,' '[p]unitive damages may not be recovered against such *governmental entities* as municipal corporations, school

districts, cities, counties, or the state and its political subdivisions.'" Phelps v. Louisville Water Co., 103 S.W.3d 46, 58 (Ky. 2003) (quoting 57 Am.Jur.2d, Municipal, County, School, and State Tort Liability § 648 (2002)). The reason for such a bar is that burden of paying punitive damages "ultimately falls on the taxpayers, and thus will fail to deter future harmful activity by the municipality itself . . ." Id. (quoting 57 Am.Jur.2d, Municipal, County, School, and State Tort Liability § 651 (2002)). Therefore, Plaintiff's state-law punitive damages claims against Butler County and Deputy West in his official capacity are dismissed. Similarly, Plaintiff may not recover punitive damages against those parties under § 1983. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); Center for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807, 818-19 (6th Cir. 2007) ("[T]he district court found the municipalities immune to punitive damages claims and properly granted summary judgment on Plaintiffs' claims for punitive damages against Defendants Springboro and Clearcreek on that basis.").

A plaintiff may recover punitive damages against an officer in his individual capacity "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Under Kentucky law, "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." KRS 411.184. The Court finds that Plaintiff's version of the facts could support a claim for punitive damages against Deputy West in his individual capacity under § 1983 and Kentucky law if a jury accepted his account. Marksbury v. Elder, 5:09-CV-24-REW, 2011 WL 5598419 (E.D. Ky. Nov. 17, 2011) ("This may be a dubious story, in the context of all witness statements, but if

proven the version could support a punitive-damages instruction under the applicable standards."). Therefore, Defendants' motion for summary judgment is denied as to punitive damages against Deputy West in his individual capacity and granted as to all other parties.

### E.  Motion to Exclude the Testimony of Dr. Cox [DN 32]

Defendants seek to exclude the testimony of Plaintiff's expert, Dr. Terry Cox, alleging in part that his testimony does not meet the standards of Fed. R. Evid. 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. <u>Mike's Train House, Inc. v. Lionel, L.L.C.</u>, 472 F.3d 398, 407 (6th Cir. 2006) (citing <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999)). In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." <u>Daubert</u>, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." <u>Id</u>. at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all

'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. <u>Kumho Tire Co.</u>, 526 U.S. at 147.

Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." <u>Kumho Tire Co.</u>, 526 U.S. at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. <u>In re Scrap Metal Antitrust Litig.</u>, 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted).

Defendants do not challenge Dr. Cox's qualifications as an expert. However, in <u>Toon v. City of Hopkinsville</u>, 5:09-CV-37, 2011 WL 1435005 (W.D. Ky. Apr. 14, 2011), the defendants sought to exclude Dr. Cox from testifying because he lacked the necessary qualifications. In reliance on <u>Berry v. City of Detroit</u>, 25 F.3d 1342, 1348–54 (6th Cir. 1994), the court concluded that "an expert witness's qualifications should not be considered in the abstract, but rather, the Court must consider 'whether those qualifications provide a foundation for a witness to answer a specific question.'" <u>Toon</u>, 2011 WL 1435005, at *2 (quoting <u>Berry</u>, 25 F.3d at 1351). The Court will adopt a similar approach in accessing Dr. Cox's opinions.

## 1. Probable Cause

Dr. Cox intends to offer two opinions concerning the absence of probable cause in this case. The two opinions are as follows:

1. There is no reason to believe that Deputy West observed Mr. Johnson in physical control of the truck in question.

2. There is nothing in the materials that were reviewed to suggest that Deputy West knew Johnson's Blood Alcohol Level, at the time the vehicle became stuck in the mud, nor was there evidence to indicate he knew the blood alcohol level within a reasonable time frame following the time when Mr. Johnson acknowledged driving this vehicle. Therefore, it is my conclusion that Deputy West had no facts or evidence strong enough to form probable cause necessary to justify arresting Mr. Johnson for DUI.

[Report of Dr. Cox, DN 32-1, at 2].

The Court finds that these observations will not be helpful to the jury and thus, should be excluded. The jury can draw these conclusions own their own from the evidence.

## 2. Malicious Prosecution

Plaintiff has never asserted a claim for malicious prosecution, so any testimony on this subject would be irrelevant. Therefore, Dr. Cox may not opine on issues of malicious prosecution.

## 3. Resisting Arrest and Use of Force

Dr. Cox offers the following seven conclusions concerning Deputy West's use of force in this case:

1. In my opinion, Deputy West created a sequential chain of events that led to the arrest of Mr. Johnson and, subsequent injuries, by the inappropriate decision to arrest Mr. Johnson on a charge of DUI when he had no probable cause to make this arrest.

2. Based on Mr. Johnson's account of events there is no reason to determine that he was attempting to prevent the effecting of an arrest, evade the arrest, nor was there any reason to believe that Mr. Johnson threatened the use of force or violence against Deputy West or another person.

3. Based on Mr. Johnson's perspective of events, there was no reason to believe that the use of any level of force was necessary.

4. Based on Mr. Johnson's account of force by means of head strikes by Deputy West who used his fist(s) was clearly excessive, inappropriate, and unnecessary approaches.

5. Based on Mr. Johnson's account if Deputy West slung him over the rail and off the porch, this action was excessive, inappropriate, and unnecessary.

6. Based on Deputy West's accounts of events, there is no reason to believe that the levels of force described by Mr. Johnson were necessary and/or appropriate. These levels of force were inconsistent of what would be expected of an officer acting in a reasonable objective manner.

7.  Based on Deputy West's perspective that Mr. Johnson stumbled and fell off the porch, it is my opinion that Deputy West had an obligation to protect the safety of Mr. Johnson who he was physically arresting.

[Report of Dr. Cox, DN 32-1, at 5-6].  Plaintiff concedes that Dr. Cox may not offer the opinion contained in the first conclusion as it goes to the ultimate question of law and fact.  [Resp. to Mtn. to Exclude, DN 34, at 5].  However, Plaintiff contends the remaining six conclusions are properly within the permissible scope of expert testimony.

While other courts have permitted testimony from an expert on excessive force, they have done so within a very limited scope.  For example, in a fairly recent Sixth Circuit case, the court found no error on the part of the district court when it permitted an expert to testify concerning the following:  "[1] the continuum of force employed by officers generally, [2] the specific training the Officers received, and [3] [the expert's] opinion that if the witnesses' testimony is credited, the Officers' actions violated nationally recognized police standards governing excessive force."  Champion v. Outlook Nashville, Inc., 380 F.3d 893, 908 (6th Cir. 2004).

The Court finds that the second and third opinions are simply conclusions of law.  Dr. Cox simply seeks to opine that Deputy West's actions were objectively unreasonable.  This is clearly prohibited.  Norman v. City of Lorain, Ohio, 1:04 CV 913, 2006 WL 5249725 (N.D. Ohio Nov. 27, 2006) ("[The expert] may testify concerning the proper procedures to be followed in the situation faced by Officer Lachner, but he may not testify that the force used by Officer Lachner was 'unreasonable' or 'unnecessary.'").  The fourth, fifth, sixth and seventh opinions seem to offer specific insight into the appropriate use of force allowed by, and the duties of, police officers facing a situation as described under Plaintiff's version of the events.  It would be helpful to the jury to know what an objectively reasonable police officer should and should not do when faced with such a situation.  He will be allowed to testify along these lines.

**4. Failure to Properly Supervise**

Dr. Cox includes in his report a series of concerns about the policy manual for the Butler County Sheriff's Department. This testimony is made irrelevant by the fact that the Court has determined that Plaintiff may not pursue a deliberate indifference claim against Butler County for failure to train. As a result, this opinion is moot.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [DN 25] is **DENIED**.

**IT IS FURTHERED ORDERED** that Defendant Commonwealth of Kentucky-County of Butler, Butler County Sheriff's Department, and Deputy Heath West's Motion for Summary Judgment [DN 31] be **GRANTED** in part and **DENIED** in part. It is **GRANTED** to all claims against Butler County, Butler County Sheriff's Department, and Deputy West in his official capacity. It is also **GRANTED** as to the claim of outrage/intentional infliction of emotional distress against Deputy West in his individual capacity. It is **DENIED** to all other claims against Deputy West in his individual capacity.

**IT IS FURTHER ORDERED** that Defendants' Motion to Exclude Testimony from Dr. Terry Cox [DN 32] be **GRANTED** in part and **DENIED** in part, as set out above.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: counsel of record

August 18, 2014